UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LIONELL OLIVER HAMILTON, | ) | Civil No. 12cv1940 JAH(RBB) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **GRANTING DEFENDANTS' MOTION TO** |
| v. | ) | **DISMISS THE COMPLAINT [ECF NO.** |
| | ) | **8]** |
| J. HURTADO, M. CATE, L. | ) | |
| SCRIBNER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Lionell Oliver Hamilton, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint on August 6, 2012, pursuant to 42 U.S.C. § 1983 alleging violations of his First, Fourth, and Eighth Amendment rights [ECF Nos. 1, 3]. Plaintiff also brings claims under 42 U.S.C. § 1986 and California Civil Code sections 52 and 52.1. (Compl. 1, 9, 12, ECF No. 1.)[1]

On October 9, 2012, Defendants Hurtado, Cate, and Scribner filed a Motion to Dismiss (the "Motion") [ECF No. 8]. Hamilton

_____

[1] Because Hamilton's Complaint and Opposition to Motion to Dismiss are not consecutively paginated, the Court will cite to each using the page numbers assigned by the electronic case filing system.

filed his Opposition to Motion to Dismiss the Complaint (the "Opposition") on December 3, 2012 [ECF No. 13].  Defendants did not file a reply.

Plaintiff was given notice on December 19, 2012, of his opportunity to submit additional evidence in opposition to Defendants' Motion to Dismiss, pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1988) (en banc), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988) [ECF No. 14].  The Court noted that Hamilton did not address his state law claims in the Opposition. (Klingele/Rand Notice 2, ECF No. 14.)  Plaintiff was given until January 4, 2013, to file any additional declarations, affidavits, or authenticated documents relevant to the exhaustion of those claims.  (<u>Id.</u>)  Hamilton did not file a response to the Court's notice.

The Court has reviewed the Complaint, Defendants' Motion, and Plaintiff's Opposition.  The Motion to Dismiss is suitable for resolution on the papers.  <u>See</u> S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons stated below, Defendants' Motion [ECF No. 8] should be **GRANTED**.

### I.  FACTUAL BACKGROUND

The allegations in the Complaint arise from a series of events that occurred while Hamilton was incarcerated at Calipatria State Prison ("Calipatria").  (Compl. 1, ECF No. 1.)  Plaintiff filed a grievance on February 16, 2009, against Correctional Officer Hurtado for harassment.  (<u>Id.</u> at 8.)  Hamilton contends that on April 7, 2009, in retaliation for filing that grievance, Defendant Hurtado "unlawfully seized plaintiff and began to roughly and forcefully pull[]" him while the Defendant was escorting Hamilton

1   to his cell.  (Id.)  When the two arrived at the cell, Plaintiff

2   asserts that Hurtado "violently pulled plaintiff['s] right arm all

3   the way out of the food port slot, up to Plaintiff's shoulder[.]"

4   (Id.)  At that point, Hamilton claims that Hurtado falsely told the

5   control booth officer that Plaintiff tried to pull the Defendant's

6   arm through the food port.  (Id.)  According to Hamilton, Hurtado

7   then pepper sprayed Plaintiff in the face through the port.  (Id.)

8       In count one of his Complaint, Hamilton alleges that Hurtado's

9   conduct was in retaliation for the February 16, 2009 grievance that

10  Plaintiff filed.  (Id. at 3, 9.)  Hamilton urges that these

11  retaliatory acts chilled and infringed upon his First Amendment

12  rights.  (Id. at 9.)  He maintains in count two that his right to

13  be free from unlawful searches and seizures under the Fourth

14  Amendment was violated by Hurtado's actions.  (Id. at 4, 9.)  His

15  third claim is that his Eighth Amendment right to be free from

16  unnecessary and excessive force was violated as a result of the

17  incident.  (Id. at 5, 9.)  Plaintiff also brings causes of action

18  under 42 U.S.C. § 1986 and California Civil Code sections 52 and

19  52.1.  (Id. at 1, 11-12.)  Hamilton argues that as to all claims,

20  Defendants Cate and Scribner, respectively, the Secretary of the

21  California Department of Corrections and Rehabilitation ("CDCR")

22  and the Warden of Calipatria, are liable because they were

23  deliberately indifferent to Hurtado's conduct.  (Id. at 12.)  He

24  also alleges that the two are responsible for the policies and

25  customs at Calipatria.  (Id. at 10.)

26

27

28

3

II.   LEGAL STANDARDS

A.   Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999). "The old formula -- that the complaint must not be dismissed unless it is beyond doubt without merit -- was discarded by the Bell Atlantic decision [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]." Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Twombly, 550 U.S. at 563 n.8. A dismissal under

4

Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, Inc., 382 F.3d at 973 (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to

a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing

Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

     "When a plaintiff has attached various exhibits to the

complaint, those exhibits may be considered in determining whether

dismissal [i]s proper . . . ."  Parks Sch. of Bus., Inc., 51 F.3d

at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir.

1980)).  The court may also consider documents "'whose contents are

alleged in a complaint and whose authenticity no party questions,

but which are not physically attached to the [plaintiff's]

pleading.'"  Sunrize Staging, Inc. v. Ovation Dev. Corp., 241 F.

App'x 363, 365 (9th Cir. 2007) (quoting Janas v. McCracken (In re

Silicon Graphics Inc. Sec. Litig.), 183 F.3d 970, 986 (9th Cir.

1999)) (alteration in original); see Stone v. Writer's Guild of Am.

W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

     These Rule 12 (b)(6) guidelines apply to Defendants' Motion to

Dismiss.

**B.   Standards Applicable to Pro Se Litigants**

     Where a plaintiff appears in propria persona in a civil rights

case, the court must construe the pleadings liberally and afford

the plaintiff any benefit of the doubt.  Karim-Panahi v. Los

Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

of liberal construction is "particularly important in civil rights

cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

In giving liberal interpretation to a pro se civil rights

complaint, courts may not "supply essential elements of claims that

were not initially pled."  Ivey v. Bd. of Regents of the Univ. of

Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

allegations of official participation in civil rights violations

are not sufficient to withstand a motion to dismiss." <u>Id.</u>; <u>see also</u> <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." <u>Jones</u>, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. <u>Karim-Panahi</u>, 839 F.2d at 623-24. But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. <u>See</u> <u>James v. Giles</u>, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C.   <u>Stating a Claim Under 42 U.S.C. § 1983</u>**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show that (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2012); <u>Shah v. Cnty. of Los Angeles</u>, 797 F.2d 743, 746 (9th Cir. 1986).

7

### III.  DEFENDANTS' MOTION TO DISMISS

The Defendants argue that Plaintiff fails to state a claim under 42 U.S.C. § 1986 and the Fourth Amendment to the United States Constitution. (Mot. Dismiss Attach. #1 Mem. P. & A. 4, ECF No. 8.)  They also insist that he has not adequately alleged the personal involvement of Cate and Warden Scribner in the remaining § 1983 claims. (<u>Id.</u> at 5.)  Finally, they maintain that Hamilton has not shown compliance with the California Tort Claims Act, meriting dismissal of his state-law claims. (<u>Id.</u> at 6.)

A.   <u>Plaintiff's 42 U.S.C. § 1986 Claim</u>

In their Motion to Dismiss, all three Defendants assert that Hamilton fails to allege a conspiracy to deny his right to equal protection. (<u>Id.</u> at 4.)  Accordingly, they contend that he fails to state a claim under 42 U.S.C. § 1986. (<u>Id.</u>)

Plaintiff urges in his Opposition that Hurtado, Scribner, and Cate conspired to violate his rights through the prison policies that they implemented. (Opp'n 4, ECF No. 13.)  He claims that Cate and the Warden knew that Hurtado would violate Hamilton's rights because several complaints had been filed against Hurtado and other staff members for unlawful uses of force. (<u>Id.</u>)  Plaintiff states that all three Defendants were deliberately indifferent to the civil rights violations that staff members carried out as part of a "sanctioned" and "underground" use-of-force policy at Calipatria. (<u>Id.</u>)

In his Complaint, Hamilton claims that Hurtado was acting under the direction and control of Scribner and Cate. (Compl. 9-10, ECF No. 1.)  He also maintains that Scribner and Cate enacted

1    the policies and procedures for the department in which Hurtado

2    worked.  (Id. at 10.)  Plaintiff contends as follows:

3         [Defendants Scribner and Cate] intentionally, knowingly,
          recklessly, or with deliberate indifference . . . failed
4         to instruct, supervise, control, and/or discipline . . .
          all named Defendants above, in the performance of their
5         duties to refrain from[] falsifying reports, conspiring
          to violate inmate rights, unlawfully using force against
6         inmates, unlawfully seizing inmate persons[,] retaliating
          against inmates, neglecting to follow proper CDCR policy,
7         failing to conduct lawful investigations of inmates
          complaints, otherwise depriving persons of their
8         constitutional, statutory and department privileges,
          rights and immunities.

9

10   (Id. at 10-11.)  Had Cate and the Warden performed their duties in

11   a diligent fashion, Hamilton maintains that they would have known

12   that Hurtado would commit the alleged acts against Plaintiff and

13   that staff members would commit "other unlawful or unconstitutional

14   acts."  (Id. at 11.)  Hamilton urges that Scribner and Cate

15   "intentionally, knowingly, or with deliberate indifference" failed

16   to prevent Hurtado from injuring him.  (Id.)

17        "Section 1986 authorizes a remedy against state actors who

18   have negligently failed to prevent a conspiracy that would be

19   actionable under § 1985." Cerrato v. San Francisco Cmty. Coll.

20   Dist., 26 F.3d 968, 971 n.7 (9th Cir. 1994).  A conspiracy under §

21   1985 is therefore a prerequisite to a valid claim under § 1986.

22   See Karim-Panahi, 839 F.2d at 626; Sanchez v. City of Santa Ana,

23   936 F.2d 1027, 1040 (9th Cir. 1990).

24        Sections 1985(2) and (3) prohibit conspiracies to interfere

25   with the civil rights of others.  Karim-Panahi, 839 F.2d at 626.[2]

26   _____

27        [2]  Section 1985(1) is inapplicable here because it only
     applies to federal officers, which Hamilton is not.  See 42 U.S.C.
28   § 1985(1); Canlis v. San Joaquin Sheriff's Posse Comitatus, 641
     F.2d 711, 717 (9th Cir. 1981) ("The clear import of [§ 1985(1)] is
     that the statute's protections extend exclusively to the

9                                         12cv01940 JAH(RBB)

An allegation of racial or class-based discrimination is required
to state a claim for relief under either subsection.  See RK
Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir.
2002) (holding that under § 1985(3), a plaintiff must demonstrate
that defendants were motivated by class-based animus); Portman v.
Cnty. of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993) (holding
that a claim under § 1985(2) must contain an allegation of
class-based animus).  A § 1985 claim "must allege facts to support
the allegation that defendants conspired together.  A mere
allegation of conspiracy without factual specificity is
insufficient."  Karim-Panahi, 839 F.2d at 626 (citations omitted);
see also Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th
Cir. 2004) (quoting Burns v. Cnty. of King, 883 F.2d 819, 821 (9th
Cir. 1989)) ("To state a claim for conspiracy to violate
constitutional rights, 'the plaintiff must state specific facts to
support the existence of the claimed conspiracy.'")

     Here, Hamilton does not bring a claim under § 1985.  (See
generally Compl. 1, 9, 11, ECF No. 1.)  Moreover, the allegations
in Plaintiff's Complaint are premised on the assertion that Hurtado
retaliated individually against Hamilton for filing a grievance.
(See Compl. 9, ECF No. 1 ("Defendant Hurtado . . . unlawfully
seiz[ed] plaintiff's person in retaliation for plaintiff filing an
grievance against him on approximately 02-16-09 which was done in
an attempt to discourage plaintiff from exercising his 1st
Amendment rights.").)  He makes no showing that Hurtado's conduct
was racially motivated or class based.  Further, Hamilton fails to
provide any specific facts in support of the alleged conspiracy.

benefit of federal officers.").

1     See <u>Karim-Panahi</u>, 839 F.2d at 626.  Thus, the allegations in the

2     Complaint fail to state a claim under 42 U.S.C. § 1985 and

3     therefore under 42 U.S.C. § 1986.  <u>See</u> <u>Guerra v. Janda</u>, Civil No.

4     12cv2313 BEN (WVG), 2013 WL 76251, at *4 (S.D. Cal. Jan. 3, 2013)

5     (dismissing § 1985 claim where plaintiff failed to allege that he

6     was a member of a protected class and that any defendant acted with

7     class-based animus); <u>Rideau v. Velasco</u>, Civil No. 11cv2343 JAH

8     (JMA), 2012 WL 460469, at *3 (S.D. Cal. Feb. 13, 2012) (same);

9     <u>Anderson v. Dist. Attorney Office</u>, No. 11-CV-0572-IEG (MDD), 2011

10    WL 6013274, at *16 (S.D. Cal. Dec. 1, 2011) (dismissing § 1986

11    claim where plaintiffs failed to adequately allege a § 1985 claim).

12    Defendants' Motion to Dismiss Hamilton's claims under 42 U.S.C. §

13    1986 should be **GRANTED**.

14       Because it is unclear whether the Plaintiff could amend his

15    pleading to include facts sufficient to state a claim under 42

16    U.S.C. § 1986, he should be given leave to amend this cause of

17    action.  <u>Lopez</u>, 203 F.3d at 1127.

18    **B.**    **<u>Plaintiff's Fourth Amendment Claim</u>**

19       Next, Defendants assert that Hamilton's Fourth Amendment claim

20    must fail because there is no right to be free from searches and

21    seizures while in prison.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4-

22    5, ECF No. 8 (citing <u>Seaton v. Mayberg</u>, 610 F.3d 530, 534 (9th Cir.

23    2010)).)

24       In his Complaint, Plaintiff bases his Fourth Amendment claim

25    on the allegation that Hurtado "unlawfully seiz[ed] plaintiff's

26    person." (Compl. 9, ECF No. 1.)  In the Opposition, he explains

27    that his seizure claim is based on when Hurtado "snatched

28    plaintiff's arm and O.C. pepper sprayed" him. (Opp'n 4-5, ECF No.

13.)  Hamilton insists that, contrary to Defendants' point of view, he has a right to be free from unlawful searches and seizures while in prison.  (Id. at 4.)

"Where an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment . . . that 'must be the guide for analyzing' the complaint."  Picray v. Sealock, 138 F.3d 767, 770 (9th Cir. 1998) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion)).  While Hamilton initially claimed that Hurtado "seized" him, Plaintiff clarifies in his Opposition that his Fourth Amendment claim is premised on an inappropriate use of force by Hurtado.  (See Opp'n 4-5, ECF No. 13.)

"The Fourth Amendment applies to excessive force claims by pretrial detainees, see Lolli v. Cnty. of Orange, 351 F.3d 410, 415 (9th Cir. 2003), while the Eighth Amendment applies to excessive force claims of convicted inmates, see Hudson v. McMillian, 503 U.S. 1, 7 (1992); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)." Bustamante v. Roman, No. CV 08-0116-PHX-DGC (JRI), 2008 WL 622021, at *2 (D. Ariz. Mar. 5, 2008); see also Ellis v. Albonico, No. CIV. S-04-1483 LKK/CMK P, 2009 WL 961437, at *5 (E.D. Cal. Apr. 8, 2009) (citations omitted) ("When prison officials use force against post-conviction inmates, the applicable right is the Eighth Amendment right to be free from cruel and unusual punishment, rather than the Fourth Amendment right underlying excessive force claims by non-prisoners."); Davis v. Schiro, No. CV 07-2167-PHX-SMM (ECV), 2008 WL 490622, at *2 (D. Ariz. Feb. 20, 2008) ("Claims of excessive force by prison officials arise under the Eighth Amendment, not the Fourth Amendment.").  To the extent Hamilton

attempts to allege a Fourth Amendment claim based on improper use of force, he has already brought this claim under "an explicit textual source of constitutional protection," the Eighth Amendment. See Jones v. Ryan, Civil No. 07-1019 J JMA, 2009 WL 1883700, at *9 (S.D. Cal. June 26, 2009) (quoting Picray v. Sealock, 138 F.3d 767, 770 (9th Cir. 1998). Accordingly, Hurtado, Scribner, and Cate's Motion to Dismiss Hamilton's Fourth Amendment claim should be **GRANTED**.

Courts must give a plaintiff leave to amend an allegation unless he could not possibly cure the claim by asserting other facts. Lopez, 203 F.3d at 1127. A plaintiff should not be granted the opportunity to amend when doing so would be futile. See James, 221 F.3d at 1077. There is nothing in his Complaint or Opposition that suggests that Hamilton can allege other facts that will state a plausible Fourth Amendment claim. Because there are no additional facts that could cure these deficiencies, Plaintiff should not be given leave to amend his Fourth Amendment claim. Lopez, 203 F.3d at 1127.

**C.** **The Personal Involvement of Defendants Scribner and Cate**

In addition to his Fourth Amendment claim (count two), Plaintiff's remaining § 1983 claims include causes of action for violations of his First (count one) and Eighth (count three) Amendment rights. (Compl. 3, 5, ECF No. 1.) Both the Plaintiff and Defendants combine their arguments for these two claims.

To be liable under § 1983, a person acting under color of state law must cause the plaintiff to suffer the violation of a constitutional right. 42 U.S.C.A. § 1983. "A person 'subjects' another to the deprivation of a constitutional right . . . if he

does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978) (citing <u>Sims v. Adams</u>, 537 F.2d 829 (5th Cir. 1976)).  Thus, the plaintiff must allege that each of the defendants committed some act, or failed to act in a particular way, that was the cause of the purported constitutional injury.  <u>Williams v. Bennett</u>, 689 F.2d 1370, 1385 (11th Cir. 1982).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).

Section 1983 of the Civil Rights Act does not authorize a plaintiff to bring a cause of action based on respondeat superior liability. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978) ("[T]he fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent.").  State officials are subject to suit in their personal capacity if "they play an affirmative part in the alleged deprivation of constitutional rights." <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987), <u>overruled on other grounds by Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 925 (9th Cir. 2012).  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (1998).

"The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury.'" Little v. Pena, No. C 94-0671 MHP, 1994 U.S. Dist. LEXIS 9068, at *9 (N.D. Cal. June 29, 1994) (quoting Bergquist v. Cnty. of Cochise, 806 F.2d 1364, 1370 (9th Cir. 1986)); see K'Napp v. Adams, No. 1:06-cv-01701-LJO-GSA (PC), 2009 U.S. Dist. LEXIS 38682, at *9 (E.D. Cal. May 7, 2009).

Defendants contend that Hamilton's allegations under § 1983 "do not support the requisite personal involvement and/or causation by Defendants Cate and Scribner." (Mot. Dismiss Attach. #1 Mem. P. & A. 5, ECF No. 8.) Cate and the Warden assert that Plaintiff's claims are general, conclusory, and based on their role as Hurtado's supervisor. (Id. at 5-6.) "However, there is no respondeat superior liability under § 1983." (Id. at 6.)

Hamilton states in his Opposition that these Defendants knew that civil rights violations were occurring at Calipatria because numerous complaints had been filed against Hurtado and other staff members. (Opp'n 5, ECF No. 13.) Plaintiff insists that Scribner and Cate failed to prevent those violations and implemented a deficient use of force policy. (Id.)

In his Complaint, Hamilton maintains that Scribner and Cate directed and controlled Hurtado, and established the policies and practices at Calipatria. (See Compl. 9-10, ECF No. 1.) Plaintiff also claims that these Defendants acted with deliberate indifference by failing to instruct, supervise, control, and

15

1   discipline Calipatria staff members for a variety of misdeeds.

2   (Id. at 10-11.)  He additionally complains that had Cate and the

3   Warden diligently performed their duties, they would have known of

4   Hurtado's alleged misconduct and "other unlawful or

5   unconstitutional acts."  (Id. at 11.)  Finally, Plaintiff urges

6   that based on the many notifications from Calipatria prisoners,

7   Scribner and Cate could have prevented Hurtado's actions against

8   Hamilton, but "intentionally, knowingly, or with deliberate

9   indifference to the rights of plaintiff failed to do so."  (Id.)

10       **1.   Count one:  First Amendment retaliation claim**

11       "[A] prison inmate retains those First Amendment rights that

12   are not inconsistent with his status as a prisoner or with the

13   legitimate penological objectives of the corrections system."  Pell

14   v. Procunier, 417 U.S. 817, 822 (1974).  The Constitution provides

15   protections from deliberate retaliation by government officials for

16   an individual's exercise of First Amendment rights.  See Vignolo v.

17   Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); Soranno's Gasco,

18   Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Because

19   retaliation by prison officials may chill an inmate's exercise of

20   legitimate First Amendment rights, retaliatory conduct is

21   actionable even if it would not otherwise rise to the level of a

22   constitutional violation.  See Thomas v. Evans, 880 F.2d 1235, 1242

23   (11th Cir. 1989).  Yet, retaliation claims are reviewed with

24   particular care because they are prone to abuse by prisoners.

25   Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Colon v.

26   Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

27       A plaintiff suing prison officials pursuant to § 1983 for

28   retaliation must allege sufficient facts that show that (1) "the

retaliated-against conduct is protected," (2) the "defendant took
adverse action against plaintiff," (3) there is a "causal
connection between the adverse action and the protected conduct,"
(4) the act "would chill or silence a person of ordinary firmness,"
and (5) the conduct does not further a legitimate penological
interest.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir.
2012) (citations omitted).  A plaintiff can allege retaliatory
intent with a time line of events from which retaliation can be
inferred.  See id. (citations omitted).  If the plaintiff's
exercise of his constitutional rights was not chilled (factor
four), he must allege that the defendant's actions caused him to
suffer more than minimal harm.  See Rhodes v. Robinson, 408 F.3d
559, 567-68 n.11 (9th Cir. 2005).  But see Mendocino Envtl. Ctr. v.
Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999).  The test is
objective -- whether an official's acts would "'chill or silence a
person of ordinary firmness from future First Amendment
activities.'"  Mendocino Envtl. Ctr., 192 F.3d at 1300 (citation
omitted).

　　　Plaintiff's retaliation claims against Scribner and Cate are
largely premised on their supervisory role of Hurtado.  Nowhere in
Hamilton's Complaint does he allege that Cate and the Warden
personally participated in Hurtado's retaliatory conduct or
otherwise took any adverse action against Plaintiff.  See Rhodes,
408 F.3d at 567-68.  To the extent Hamilton claims that Scribner
and Cate caused the constitutional deprivation because they
directed Hurtado to injure Plaintiff, his conclusions are
unsupported by the facts alleged.  See Clegg, 18 F.3d at 754-55
(stating that courts need not accept conclusory allegations as true

1  if they cannot reasonably be drawn from the facts alleged); <u>Ivey</u>,

2  673 F.2d at 268; <u>see</u> <u>Ashcroft</u>, 556 U.S. at 679 (stating that legal

3  conclusions must be supported by factual allegations).

4      Further, while Hamilton argues that Scribner and Cate

5  established the policies, practices, or customs at Calipatria, he

6  does not provide any facts showing that these two Defendants

7  instituted any policies that adversely affected Plaintiff and or

8  were implemented in retaliation after he filed the grievance.  <u>See</u>

9  <u>Wayne v. Leal</u>, No. 07 CV 1605 JM (BLM), 2009 WL 2406299, at *6

10  (S.D. Cal. Aug. 4, 2009).  ("Here, although Plaintiff makes a

11  general claim of retaliation, he fails to articulate exactly what

12  action was taken in retaliation against him . . . .") (citation

13  omitted).  Finally, Hamilton fails to plausibly allege that any of

14  Scribner and Cate's actions or inactions did not further a

15  legitimate penological interest.  <u>See</u> <u>Watison</u>, 668 F.3d at 1114.

16      For these reasons, Defendants' Motion to Dismiss Plaintiff's

17  First Amendment claims against Scribner and Cate should be **GRANTED.**

18  Because it is unclear whether Hamilton could amend to allege facts

19  sufficient to state a First Amendment claim against these two

20  Defendants, Plaintiff should be given leave to amend.  <u>Lopez</u>, 203

21  F.3d at 1127.

22      **2.   Count three:  Eighth Amendment excessive force claim**

23      The Eighth Amendment prohibits prison officials from using

24  excessive physical force against inmates.  <u>Farmer v. Brennan</u>, 511

25  U.S. 825, 832 (1994).  The inquiry is not whether the prisoner

26  suffered a certain level of injury, but "'whether force was applied

27  in a good-faith effort to maintain or restore discipline, or

28  maliciously and sadistically to cause harm.'"  <u>Wilkins v. Gaddy</u>,

18

559 U.S. 34, 130 S. Ct. 1175, 1178 (2010) (citation omitted);

Hamilton v. Brown, 630 F.3d 889, 897 (9th Cir. 2011); see Farmer,

511 U.S. at 835-36 (noting that a plaintiff must allege that the

defendant used force knowing that harm would occur).  To determine

whether a plaintiff has satisfied the malicious and sadistic

standard, courts examine the following five factors:  (1) the

inmate's injury; (2) the need for the use of force; (3) "'the

relationship between that need and the amount of force used; (4)

the threat reasonably perceived by the [defendant]; and (5) any

efforts made to temper the severity of a forceful response.'"

Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting

Hudson v. McMillian, 503 U.S. at 7); see Whitley v. Albers, 475

U.S. 312, 321 (1986); Madrid v. Gomez, 889 F. Supp. 1146, 1247

(N.D. Cal. 1995).

A plaintiff may state an Eighth Amendment claim for deliberate

indifference against a supervisor based on the supervisor's

knowledge of, and acquiescence in, unconstitutional conduct by his

or her subordinates.  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir.

2011).  "A defendant may be held liable as a supervisor under §

1983 'if there exists either (1) his or her personal involvement in

the constitutional deprivation, or (2) a sufficient causal

connection between the supervisor's wrongful conduct and the

constitutional violation.'"  Id. (quoting Hansen v. Black, 885 F.2d

642, 646 (9th Cir. 1989)).  "'A supervisor can be liable in his

individual capacity for his own culpable action or inaction in the

training, supervision, or control of his subordinates; for his

acquiescence in the constitutional deprivation; or for conduct that

showed a reckless or callous indifference to the rights of

1  others.'"  Id. at 1208 (quoting Watkins v. City of Oakland, 145

2  F.3d 1087, 1093 (9th Cir. 1998)).

3      Plaintiff's allegations in the Complaint are insufficient to

4  state an Eighth Amendment claim against Cate and the Warden.

5  Hamilton generally asserts that these Defendants acted with

6  deliberate indifference to Officer Hurtado's Eighth Amendment

7  violation.  (Compl. 12, ECF No. 1.)  Yet, Hamilton does not allege

8  facts showing that Hurtado's conduct was pervasive and that pattern

9  of conduct was known to Scribner and Cate.

10     As pleaded, Plaintiff has not provided any specific facts

11 suggesting a causal connection between Scribner and Cate's general

12 failure to take disciplinary action and Hurtado's use of excessive

13 force against Hamilton on April 7, 2009.  See Redman v. Cnty. of

14 San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) (stating that a

15 plaintiff may state a § 1983 cause of action against a supervisor

16 when there is an adequate causal connection between the defendant's

17 breach of duty and the constitutional injury).  The requisite

18 causal connection cannot be reasonably inferred from Hamilton's

19 generalized contentions.  See Ashcroft, 556 U.S. at 678.  Further,

20 there are no concrete facts suggesting that Cate and the Warden

21 improperly supervised Hurtado, acquiesced in the excessive use of

22 force, or acted with a reckless or callous indifference to

23 Plaintiff's rights.  See Starr, 652 F.3d at 1208 ("We have held

24 that 'acquiescence or culpable indifference' may suffice to show

25 that a supervisor 'personally played a role in the alleged

26 constitutional violations.'")  Moreover, as discussed above,

27 Hamilton's allegation that Scribner and Cate directed Hurtado to

28 hurt Plaintiff is unsupported by any plausible factual basis.

Hamilton also fails to state a claim against Scribner and Cate on the basis that they enacted constitutionally-flawed policies, practices, or customs at Calipatria. (See Compl. 10, ECF No. 1.) Supervisory liability may exist if officials implement a policy so deficient that the policy "'itself is a repudiation of constitutional rights'" and is "'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646 (quoting Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987); see also Hydick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012) (holding that plaintiff failed to state a claim where he failed to allege the specific policy defendants implemented that led to constitutional violations). Here, Hamilton does not identify which policy Scribner and Cate allegedly implemented, how it was deficient, or how it served as the moving force to cause Hurtado to violate Plaintiff's rights. See Gregory v. Clark, No. 1:11-cv-00151 JLT (PC), 2012 WL 6697955, at *4 (E.D. Cal. Dec. 21, 2012) (holding that plaintiff failed to state a claim based on supervisory liability where the he failed identify the policy, describe the problematic content, and explain how the policy was the moving force for the purported Eighth Amendment violations). Moreover, Hamilton claims that Hurtado "did not follow CDCR use of force policy" and thus was acting contrary to, rather than in compliance with, any policies promulgated by CDCR. (See Compl. 9, ECF No. 1.)

Accordingly, the Motion to Dismiss count two from the Complaint against Scribner and Cate should be **GRANTED**. Because it is unclear whether Hamilton could amend to allege facts sufficient to state a deliberate indifference claim against Scribner and Cate, Plaintiff should be given leave to amend. Lopez, 203 F.3d at 1127.

**D.    Plaintiff's State-Law Claims**

Next, as to Hamilton's claims brought pursuant to California Civil Code sections 52 and 52.1, Defendants argue that Plaintiff has not affirmatively alleged compliance with the California Tort Claims Act (the "Act"), as required by California law.  (Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 8.)  Further, they insist that Hamilton can no longer comply with the Act because more than six months have elapsed since the events giving rise to this lawsuit occurred.  (Id. at 7.)  Thus, they maintain that Plaintiff's state law claims should be dismissed without leave to amend.  (Id.)

Hamilton does not address these claims in the Opposition. (See generally Opp'n 4-5, ECF No. 13.)  In his Complaint, Plaintiff does not assert that he complied with the requirements of the California Tort Claims Act, nor does he state how Defendants' conduct was in violation of state law.  (See generally Compl. 8-14, ECF No. 1.)

When adjudicating a supplemental state law claim, this Court must apply state substantive law.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  The California Tort Claims Act provides that a person who sues a public employee for conduct that occurred within the scope of his or her employment must file a claim with the defendant's public-entity employer.  Rutledge v. Cnty. of Sonoma, No. C 07-4274 CW, 2008 U.S. Dist. LEXIS 51313, at *29-30 (N.D. Cal. July 1, 2008) (citations omitted).  Under the Act, filing a tort claim within the time and in the manner prescribed by statute is a prerequisite to bringing a lawsuit against any state employee or agency.  See Cal. Gov't Code §§

22

905.2, 911.2 (West 2010); Cal. Gov't Code §§ 945.4, 950.2 (West. Supp. 2013).  A tort claim must be filed within six months of when the cause of action accrues.  Cal. Gov't Code § 911.2.  This applies to "injur[ies] resulting from an act or omission [of a public employee] in the scope of his employment as a public employee . . . ."  Cal. Gov't Code § 950.2.

Hamilton fails to allege or provide evidence demonstrating that he filed a tort claim related to his section 52.1 claim.  (<u>See</u> <u>generally</u> Compl. 8-14, ECF No. 1; Opp'n 4-5, ECF No. 13.)  On December 19, 2013, the Court gave Plaintiff an extension to file "declarations, affidavits, or authenticated documents that [he] believe[d] [were] important to submit before the Court rules on the exhaustion" of this claim.  (Klingele/Rand Notice 2, ECF No. 14.) To date, he has still not provided the Court with a copy of a tort claim presented to the Victim Compensation and Government Claims Board.  Hamilton has failed to show compliance with the California Tort Claims Act; thus, he fails to state a cognizable claim under section 52.1.  <u>See</u> <u>Archer v. City of Taft</u>, No. 1:12-cv-00261-AWI-JLT, 2012 WL 3638064, at *10 (E.D. Cal. Aug. 22, 2012) (dismissing section 52.1 claim for failure to allege compliance with the California Tort Claims Act); <u>Soliz v. City of</u> <u>Bakersfield</u>, No. 1:12-CV-00841-LJO-JLT, 2012 WL 3645358, at *2 (E.D. Cal. Aug. 21, 2012) (same).

For this reason, the Motion to Dismiss Plaintiff's claim under California Civil Code section 52.1 should be **GRANTED**.  In order to proceed with this cause of action, Hamilton is required to show that he complied or can comply with the provisions of the California Tort Claims Act.  Because Hamilton's ability to file a

12cv01940 JAH(RBB)

claim appears to be time barred, and he has made no argument to the contrary, Plaintiff should not be granted leave to amend his state-law claims.  <u>See</u> <u>Lopez</u>, 203 F.3d at 1127.

Hamilton attempts to state a "claim" under California Civil Code section 52; this section provides remedies for claims brought pursuant to California Civil Code sections 51, 51.5, 51.6, 51.7, and 51.9.  <u>See</u> Cal. Civ. Code § 52 (West 2007); <u>Munson v. Del Taco, Inc.</u>, 522 F.3d 997, 1000 (9th Cir. 2008) (noting that section 52 is a remedy).  Plaintiff does not allege any of the state claims that would support injunctive relief.  Because section 52 provides for a remedy and is not a cause of action, Defendants' Motion to Dismiss Plaintiff's "claim" under California Civil Code section 52 should be **GRANTED** without leave to amend.  <u>See</u> <u>Chang Tang v. Bank of America, N.A.</u>, No. SACV 11-2048 DOC (DTBx), 2012 WL 960373, at *15 (C.D. Cal. Mar. 19, 2012) (dismissing with prejudice pro se plaintiff's "claim" for injunctive relief on the basis that it is a remedy and not a cause of action).

**IV.   CONCLUSION**

Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1986 claim against Hurtado, Scribner, and Cate should be **GRANTED** with leave to amend.  The Motion to Dismiss Hamilton's Fourth Amendment claim should be **GRANTED**, as to all Defendants, without leave to amend.  Defendants' Motion to Dismiss Plaintiff's First and Eighth Amendment claims against Scribner and Cate should **GRANTED** with leave to amend.  The First and Eighth Amendment claims against Defendant Hurtado remain unaffected.  The Motion to Dismiss Hamilton's claims under California Civil Code section 52.1 should be **GRANTED** without leave to amend.  The Motion to Dismiss

24

Hamilton's "claim" under California Civil Code section 52 should be **GRANTED** without leave to amend.

This Report and Recommendation will be submitted to United States District Court Judge John A. Houston, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties or before May 20, 2013.  The document should be captioned "Objections to Report and recommendation."  Any reply to the objections shall be served and filed on or before June 3, 2013.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: April 11, 2013

RUBEN B. BROOKS
United States Magistrate Judge

cc: Judge Houston
     All Parties of Record